Eva DeLoise LOVE, Plaintiff-in-Error,

v.

J. B. HARVEY, Defendant-in-Error.

SOUTHWESTERN INSURANCE COMPANY, an Oklahoma Corporation, Plaintiff-in-Error,

v.

J. B. HARVEY, Defendant-in-Error.

No. 41760.

Supreme Court of Oklahoma.

Dec. 17, 1968.

Jake Hunt, Oklahoma City, for plaintiffs in error.

Frank Miskovsky, Marian P. Opala, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

After a trial by jury, J. B. Harvey, defendant in error in the above captioned appeals, recovered a judgment, as plaintiff, in accord with the jury's verdict, in District Court Cause No. 159563, against the defendant therein, Eva DeLoise Love, in the sum of $10,000.00, on account of personal injuries and property damages he sustained when the Mercury automobile said defendant was driving, collided with the one in which he was riding (on April 29, 1962). Thereafter, said defendant filed a motion for a new trial on several grounds, but the only ones pertaining to the issues in this appeal, were as follows:

"* * *

"II.

"Error of the court in refusing to excuse juror, Mr. Karnes, for cause requiring the defendant to exercise one of her peremptory challenges to excuse said bias and prejudiced juror.

"III.

"Misconduct on the part of juror Mrs. Murray, in that said juror wilfully answered untruthfully questions propounded to her by counsel for the parties, and thereby said defendant was prevented from having a fair and impartial verdict. * * *."

After a hearing on said motion, the trial court entered its order and/or judgment overruling it, and the defendant lodged her appeal therefrom, as this court's Cause No. 41760, supra.

Before her appeal was filed here, or the above mentioned judgment had been super-

seded, plaintiff Harvey, her then judgment creditor, caused execution to be issued on said judgment, and, after it was returned unsatisfied, commenced, in the same district court cause, proceedings for garnishment in aid of execution, by filing his garnishment affidavit alleging his belief that Southwestern Insurance Company, plaintiff in error in the above captioned appeal No. 41995, supra, hereinafter referred to as "garnishee", had property of the defendant under its control, or was indebted to her. After said garnishee had filed its verified answer denying, in substance, that it was indebted to defendant or had in its possession any money or property owned by her, plaintiff caused interrogatories to be served upon it.

After said garnishee had filed its answer to said interrogatories, plaintiff filed a joint notice of its election to take issue on said answer, and a motion for summary judgment, pursuant to Rule 13 of the Rules adopted by this Court for the District, Superior and Common Pleas courts of this State, effective January 1, 1962 (O.S., 1967 and 1968 Supp., Tit. 12, Chap. 2, Appendix). The trial court sustained said motion and entered judgment, in accord therewith, against the garnishee. Thereafter, said garnishee perfected an appeal from said judgment to this court, docketed here as its above captioned Cause No. 41995.

Thereafter, on motion of the garnishee, concurred in by plaintiff, this court entered its order consolidating the two above described appeals under Cause No. 41760, supra.

Under the first "Proposition" defendant urges for reversal of the trial court's above mentioned order overruling her motion for new trial, she complains of having to use one of her peremptory challenges to dismiss the afore-mentioned Mr. Karns from the jury panel, after her counsel challenged him for cause, and the court had rejected, or denied, said challenge. Her position that the court should have sustained her said challenge, thus saving her one of her three peremptory challenges for use on some other

prospective juror, is based upon statements elicited from Karns during his voir dire examination. Under interrogation during said examination, Karns revealed that a Dr. M, one of plaintiff's expert medical witnesses, had, for about two weeks, been an employer of his wife at the medical clinic where he and two other physicians practiced. Thereafter, in answer to other questions asked of him during said voir dire examination, Karns stated, in substance, that he was not personally acquainted with Dr. M, and that the fact that this doctor was one of Mrs. Karns' employers would not cause him, if he became a juror in the case, to give more weight to Dr. M's testimony, than if that relationship did not exist, nor would it influence his deliberations, or affect his participating in the verdict arrived at, in the case. Immediately thereafter, however, Karns' voir dire examination, as it was recounted for the record, to Karns, by defense counsel, proceeded as indicated below:

"Q   Then I asked you the question that considering those things, if you were sitting as a juror, I mean, if you were sitting as a defendant in the case, knowing the frame of mind that you're in, and the fact that the prospective juror that would be sitting to judge your case, if you were defendant, was working for Dr. M(deleted), and Dr. M(deleted) was going to be called as a witness on behalf of the plaintiff, I asked if you would want that juror to sit as a juror in your case as defendant, and I believe your answer was, no, I would not, is that correct, in substance, the statement of the question asked and the answer that you gave?

"A   Yes, sir. * * *."

Defendant contends, on the basis of the above quotation, that, if Karns felt that he would not have wanted a man in his situation, and frame of mind, on the jury, had he been the defendant in the case, "then certainly the trial court should have excused him for cause in the instant action."

There is no merit to defendant's conclusion from this, that she was denied a "fair trial", merely because she was compelled to use one of her peremptory challenges to excuse Karns from the jury. Stillwell v. Johnson, Okl., 272 P.2d 365, in which she says we followed Kerby v. Hiesterman, 162 Kan. 490, 178 P.2d 194, does not support such a conclusion. There, the prospective juror answered *incorrectly* questions on voir dire examination concerning his qualifications, *and he was accepted as a juror, and participated in the verdict.* Here, nothing like that occurred. In Kansas City Southern Ry. Co. v. Johnston, Okl., 429 P.2d 720, cert. den., 389 U.S. 985, 88 S.Ct. 481, 19 L.Ed.2d 471, we demonstrated that, in a situation like the present one, we follow the rule under Tit. 38 O.S.1961, § 29, that the forced use of a peremptory challenge to excuse a juror, even if he should have been excused for cause, is not, in and of itself, sufficient ground for reversal of a judgment in accord with the verdict. We apply that principle here, and reject defendant's contention.

Defendant's argument, under her Proposition II, is based upon the revelation that the jury's foreman, Mrs. Murray, made, for the first time in the case, at the hearing on defendant's motion for new trial, that, at the time she was examined on voir dire and accepted as a juror in the case, she had been involved in, and had received whiplash injuries in, an automobile collision herself. Defendant makes no direct charge (as alleged in her hereinbefore quoted motion) that Mrs. Murray answered untruthfully any question propounded to her on her voir dire examination, but she argues that, from questions propounded to other prospective jurors on the same panel, Mrs. Murray should have known that, having had such an accident, would raise serious questions in defense counsel's mind about her qualifications, or desirability, as a juror, and that she should have voluntarily revealed, on her own initiative, the facts about her own accident, during her voir dire examination. Her counsel says: "Whether

the absence of Mrs. Murray as a juror would have made any difference in the verdict is not the test, but, rather the fact that she failed to reveal material information that could have lead to her being excused from jury service in that case. Her failure to do so denied the defendant a fair trial and it was an abuse of discretion on the part of the trial court to deny defendant's motion for new trial."

Some further facts Mrs. Murray revealed, when interrogated on defendant's motion for new trial, were that, when she served as a juror, she was under the care of a doctor for the whip-lash injuries she had received when her auto was "rear-ended" in the afore-mentioned collision; that she had made no claim for damages on account of said injuries, nor employed an attorney to do so; that she "had met with an insurance adjuster and that's all"; and that, after the end of her jury service, she had settled her claim. Under further interrogation, Mrs. Murray denied that she "wrongfully, deceitfully or untruthfully" answered, or withheld an answer to, any question propounded to her on voir dire examination; and she stated, in substance, that she participated in the jury's deliberations on, and their verdict in, the case "as best I knew how"; and that, on voir dire examination, she had correctly answered "No", when asked if she had any bias or prejudice against any person who brought that kind of a suit. She denied that she willfully or deceitfully tried to hide anything to remain on the jury panel, but admitted that she was acquainted with the fact that the present action also involved a whip-lash injury. Mrs. Murray further testified that she understood that other jurors who were examined before her, on the voir dire examination, had "volunteered information" to the attorneys conducting the examination. Under re-cross examination, Mrs. Murray testified that her service as a juror in the case was the first she had ever had; that she felt like it was her civic duty to serve; and that she had no bias, or partiality, for either of

the parties in the case. A portion of her re-direct examination was as follows:

"Q  At the time you took your seat as a prospective juror, you had knowledge acquired by your own personal experience that a person involved in a car accident—a rear-end accident—had pain and needed the care of doctors and could make a claim against the insurance company?

"A  Yes, * * *

* * * * * *

"Q  * * * will you tell the court why you thought the claims adjuster came out to see you—* * *?

"A  He simply asked me how the accident happened, and that is all I told him.

* * * * * *

"A  Yes, I told him that I was under (a doctor's) care but nothing further.

* * * * * *

"Q  And he never talked to you about paying you or asking you questions about it * * *?

"A  That is right.

"Q  Did you expect to receive any money as a result of this accident, based on that conversation?

"A  No. * * *

"Q  You never talked to a lawyer before you served as a juror, did you?

"A  No, I never did * * *."

Counsel for the defendant is critical of Mrs. Murray's failure to volunteer the information that she had suffered an injury similar to that of the plaintiff in this case, at the time she was asked on voir dire examination, *if she could be a fair and impartial juror.* Defense counsel further say that if Mrs. Murray "had been fair in that regard and had not concealed this information from the attorneys, further questioning of her could have led to her disqualification to sit as a juror in this cause," citing Kansas City Southern Ry. Co. v. Black, [Okl.], 395 P.2d 416, as "almost directly in point * * *".

One way in which plaintiff's counsel says that the present case differs from the cited one is that, there, the offending juror "failed to answer questions put to the jury as a whole when he could not but know that such questions were intended for him and if he had answered the questions he might have been challenged for cause or in a peremptory manner"; while here, "Mrs. Murray did not fail to answer any questions generally posed to the jury while she was sitting in the box."

We agreed that there is not the evidence of deliberate concealment and possible prejudice here, that there was in the Black case, supra. There the juror, Crase, had been an employee of the defendant railway company. He had a back injury during that time, had consulted a lawyer in regard to filing suit against said employer, and (as stated in the opinion) "had been released from its service under circumstances that were not calculated to leave a good feeling between * * *" the two. Furthermore, Crase admitted, at the hearing on the motion for new trial, that he had heard the jury panel, as a whole, asked on voir dire examination, if any of them had had any injuries or personal injury claims or any law suits against anyone.

Here, Mrs. Murray had not consulted a lawyer about lodging a claim against anyone *on account of her injuries, and, apparently,* it had never occurred to her that she would do such a thing. It was brought out at the hearing on the motion for new trial that Mrs. Murray was not acquainted with the plaintiff, or defendant, and there is no evidence that she had any feeling of bias, or prejudice, for, or against, either, or that she had any reason, except for her injuries, to have any such feeling.

As said in Dimmick v. Colonial Motor Coach Corp., 136 Misc. 299, 240 N.Y.S. 615, 617: "It is a serious matter to challenge the validity of a verdict upon a ground which attacks the integrity of a * * * (person) participating in it." In Stillwell v. Johnson, supra, we referred (272 P.2d p. 367) to the trial court's "very large and

extended discretion" in granting new trials whenever in his opinion "the defeated party has not in all probability had a reasonably fair trial, or received substantial justice", and we also took note of that court's advantageous position, as compared with ours, in determining whether such a trial has been had. In Lyons v. Valley View Hospital, Okl., 341 P.2d 261, 262, we indicated that, where a juror has not incorrectly answered any interrogation on voir dire examination, the trial court's ruling on the subsequent motion for new trial, filed on the ground of the juror's conduct, is an important factor in this court's consideration of the matter. In this connection, notice Thomas v. Hodges, 201 Tenn. 313, 299 S.W.2d 1, 63 A.L.R.2d 1059, and the annotation following it at 63 A.L.R.2d 1061, and 31 Am.Jur., "Jury", secs. 142 and 143.

■ Consistent with these previous expressions, it is our opinion that, in the situation presented here, the trial judge was in a much better position than this court to determine whether, or not, Mrs. Murray was guilty of any misconduct, or concealment, that resulted in defendant counsel's being deprived of determining whether, or not, she would have been impartial in her consideration of the case, and whether or not she was, in fact, impartial. By his order and/or judgment overruling defendant's motion for a new trial, that court, in this case, has determined these matters adversely to defendant. After having thoroughly examined the record, and considered the arguments presented, we cannot say that the trial court erred, or abused his proper judicial discretion. Said court's judgment is therefore affirmed as dispositive of the issues in the appeal lodged here as No. 41760, supra.

As to the garnishment proceedings instituted in the trial court, before that appeal was lodged here, the hereinbefore named garnishee insurance company urges reversal in appeal No. 41995, supra, of said defendant's hereinbefore mentioned summary judgment in favor of plaintiff. To properly consider the claimed error in this judgment, it is necessary to notice, in more detail, the posture of the garnishment proceedings at that time.

The interrogatories that plaintiff had theretofore propounded to the garnishee were:

(1) "Did you on or before April 29, 1962, issue a policy of insurance for bodily injury and property damage liability protecting the above named defendants?"

(2) "If the answer to the preceding is yes, what were the limits of bodily injury and property damage liability?"

(3) "If the answer to question No. 1 above is yes, attach a copy of the policy or policies to this answer."

In the answer the garnishee had filed to these interrogatories, it affirmed that it had issued such a policy, as referred to in the above quoted interrogatory (1), and, as its answer to the other two quoted interrogatories, it merely directed attention to, and attached thereto as "EXHIBIT A", duplicate copies of two typed, and printed form, sheets of paper, which it referred to therein as "face sheet of policy", and stated: "This is the only part of the policy of which a copy is retained by the company." The first of these two sheets of paper, designated in its printed caption as "Daily Report", indicates that a "Family Automobile Policy" was issued to "Clifton L. Love" on July 27, 1961, for a term of one year, with a limit of liability for bodily injury of $5,000.00 for each person, and describing the "owned automobile" as a certain Buick. The second of these sheets of paper, captioned "General Change Endorsement", indicates that on January 8, 1962, the "owned automobile" changed to a certain Mercury. Plaintiff's motion for the summary judgment, on the basis of the garnishee's above described answer, was in words and figures as follows:

"As disclosed by the answer filed by garnishee on November 29, 1965, to plaintiff's interrogatories, the garnishee admits having in effect on April 29, 1962, a policy of insurance for bodily injury and property damage liability affording

full coverage to the defendant herein, and further admits that the policy limits garnishee's liability for bodily injury to $5,000.00 to each person.

"Therefore, there exists here no controversy as to any material fact and plaintiff is entitled to judgment against the garnishee for $5,000.00, all as provided in Rule 13 of the Supreme Court promulgated for the guidance of trial Courts."

■ The garnishee argues, in effect, that the way in which it answered the above described interrogatories constituted no retraction of its denials (contained in its previously filed answer to the garnishment summons) that it was indebted to the defendant, or had any money or property it owed her; and that, even though its answers to the latter interrogatories might indicate that there was such an insurance policy in effect, this did not mean (as the defendant, and the trial court, apparently concluded) that there was involved in the garnishment proceedings "no substantial controversy as to any material fact", within the meaning of Rule No. 13, supra.

■ We agree. Assuming, without deciding, that the garnishee's pleadings in the garnishment proceedings showed that one of its policies was in force during the period in which the subject collision occurred, and that the policy's limit of liability for the bodily injury of one person was $5,000.00, it does not necessarily follow that such policy applied to defendant's liability to plaintiff, as determined by the verdict, and judgment, based thereon, in Cause No. 159563, supra.

The reported decisions of this court are replete with instances in which questions have arisen with reference to the coverage, applicability, or inapplicability, of variously worded insurance contracts, to such adjudicated liabilities. See, for instance, Oklahoma Farm Bureau Mut. Ins. Co. v. Tyra, 207 Okl. 116, 247 P.2d 969, in which, however, the garnishee offered no evidence to support its representations as to such matters. See also Moral Ins. Co. v. Steves, 208 Okl. 529, 257 P.2d 836, in which the garnishee insurance company had not filed an answer to the garnishment summons, as here, and the insurance policy was in evidence. Here, the garnishment proceedings never reached the evidentiary, or trial, stage, and the garnishee's answer to plaintiff's interrogatories contained nothing sufficient to refute, countermand, or nullify the denials contained in its previous answer to the garnishment summons. As a consequence there were still issues of fact, and perhaps of law, to be resolved between it, and the plaintiff, before entry of any judgment in the garnishment proceedings was proper. The trial court's purported summary judgment was therefore premature. Such judgments partake of the nature of judgments on the pleadings, which are not favored by the courts, and should only be entered where no issue is joined. See Atchison, Topeka and Santa Fe Ry. Co. v. Coulson, Okl., 371 P.2d 914.

If it develops on the trial of the issues in the garnishment proceedings that the only basis for the denials contained in the garnishee's answer was that plaintiff's judgment for $10,000.00 was not yet final, then, when, as, and if, our hereinbefore announced affirmance of said judgment becomes final, such defense may no longer be available to the garnishee. In this connection, notice Standard Insurance Co. v. Hodge, Okl., 294 P.2d 567.

In accord with the foregoing, the trial court's summary judgment is hereby reversed, and this cause is remanded with instructions to said court to vacate it, and proceed with the garnishment proceedings in a manner not inconsistent with the views herein expressed.

All the Justices concur.