Robert L. SMITH, Appellant,

v.

FARMERS COOPERATIVE ASSOCIATION OF BUTLER, Oklahoma, R.B. Shepherd, Melvin Baker, Glen Hubbard, Gene Miller and Curtis Walker, Appellees.

No. 69563.

Supreme Court of Oklahoma.

Feb. 4, 1992.

Craig Dodd & Associates by James Craig Dodd and David C. Vorwald, Enid, for appellant.

Meacham & Meacham by David S. Stratton, Clinton, for appellees.

HODGES, Vice Chief Justice.

## PROCEDURAL HISTORY

Robert L. Smith (Smith), brought this action below for damages on four theories of recovery after he was discharged from his job at the Farmers Cooperative Association of Butler, Oklahoma (Co-op). The Co-op, R.B. Shepherd, Melvin Baker, Glen Hubbard, Gene Miller and Curtis Walker (defendants/appellees), filed a motion for summary judgment on all four theories. Smith filed a brief opposing only two of the theories: (1) tortious discharge in violation of public policy relating to public officials; and (2) tortious intentional infliction of

emotional distress. The trial court granted appellees' motion for summary judgment on all counts and Smith appealed.

The Court of Appeals reversed and remanded to the trial court, finding that the trial court erred in determining that appellees' conduct could not as a matter of law give rise to an action for tortious discharge or tortious intentional infliction of emotional distress. The Court of Appeals recognized the public policy exception to the at-will employee termination rule when the discharge of an at-will employee is in contravention of a clear mandate of public policy as set forth in *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla.1989).

## ISSUES

The issues on appeal are whether summary judgment should have been granted to the appellees in the trial court (1) on the issue of tortious discharge in violation of public policy relating to public officials and (2) on the issue of tortious intentional infliction of emotional distress.

## FACTS

Smith had been an at-will employee of the Co-op for more than six years when he was terminated. He was terminated by unanimous vote of the Board of Directors of the Co-op, who are the individual appellees, Shepherd, Baker, Hubbard, Miller and Walker. He was also the mayor of Butler, Oklahoma, and a voting member of the town board of trustees.

Smith asserts that Baker wanted to obtain a zoning variance. Baker allegedly spoke to Smith about obtaining the variance. However, Baker's request was subsequently denied by the town board. Smith claims that he was fired in retaliation for the denial of Baker's zoning variance. Appellees, on the other hand, assert that Smith was discharged because of customer complaints and abuse of overtime hours when he had been warned not to take any more overtime.

In order to rebut appellees' motion for summary judgment by demonstrating that there were issues of material fact still in controversy surrounding the alleged retaliatory firing, Smith offered the following evidence. Don Mitchell (Mitchell), the manager at the Co-op, stated in his sworn affidavit that, approximately one week after the zoning variance denial, Baker spoke to him about Smith's possible termination from his position as a sales clerk at the Co-op. Mitchell also stated that he personally attended all of the meetings held by the Co-op Board and that at the first meeting following the denial of the zoning variance request, Baker brought up the issue of firing Smith.

Mitchell further stated in his affidavit that at each subsequent board meeting following the zoning variance denial, Baker brought up the subject of firing Smith and that Baker had never discussed this subject prior to the zoning variance denial. There is a discrepancy between the depositions of the Co-op board members, who say that Smith was not fired in retaliation for the zoning variance denial, and Mitchell's affidavit.

## DISCUSSION

### I.

Okla.Stat. tit. 12, ch. 2, app., rule 13 (Supp.1984) states:

a. A party may move for judgment in his favor on the ground that the depositions, admissions in the pleadings, stipulations, answers to interrogatories and to requests for admissions, affidavits, and exhibits on file, filed with this motion.... show that there is no substantial controversy as to any material fact.

. . . . .

e. If it appears to the court that there is no substantial controversy as to any material fact and that one of the parties is entitled to judgment as a matter of law, the court shall render judgment to said

party whether or not he is the moving party.

Summary judgment is proper only when no substantial controversy exists as to any material fact. *Flanders v. Crane Co.,* 693 P.2d 602, 605 (Okla.1984); *Hinson v. Cameron,* 742 P.2d 549, 551 (Okla.1987). Material facts are those facts which tend to prove or disprove an element of the case. Summary judgments are similar to judgments on the pleadings, which are not favored by the courts, *Love v. Harvey,* 448 P.2d 456, 462 (Okla.1968).

Therefore, it must be determined whether there exists any substantial controversy as to any material fact. If so, summary judgment was not proper.

## II.

◼ In *Burk v. K–Mart Corp.,* 770 P.2d 24, 26 (Okla.1989), this Court stated the general principle that "an employment contract of indefinite duration may be terminated without cause at any time without incurring liability for breach of contract." However, this Court also recognized a public policy exception to the terminable-at-will rule in a narrow class of cases. *Id.* at 28. The public policy exception applies when "the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory, or decisional law." *Id.* Under *Burk,* it is a tort for an employer to terminate an at-will employee in contravention of a clear mandate of public policy. *Id.*

Furthermore, this Court reasoned that because the term "public policy" has such a vague meaning, the exception must be tightly circumscribed. *Id.* at 29. This Court recognized "an actionable tort claim under Oklahoma law where an employee is discharged for refusing to act in violation of an established and well defined public policy or for performing an act consistent with a clear and compelling public policy."

*Id.* This reasoning is consistent with this Court's earlier statement in *Hinson* finding that

> [a]n at-will employee's discharge has been declared to be actionable on several *public policy* grounds. Claims recognized under this rubric are those by employees dismissed for (a) refusing to participate in an illegal activity; (b) performing an important public obligation; (c) exercising a legal right or interest; (d) exposing some wrongdoing by the employer; and (e) performing an act that public policy would encourage or, for refusing to do something that public policy would condemn, when the discharge is coupled with a showing of bad faith, malice, or retaliation.

*Hinson* at 552, 553.

Title 11, section 43–101 of the Oklahoma Statutes is a statutory mandate of public policy as contemplated by *Burk.* Section 43–101 provides that the general zoning power of municipalities is "[f]or the purpose of promoting health, safety, morals, or the general welfare of the community." An official who derives his authority from section 43–101 is required to act in the public's best interest. The public policy exception to the employee-at-will doctrine applies when an employee is fired in retaliation for acting consistent with section 43–101. Under *Burk* and *Hinson,* if Smith were fired for performing an act consistent with public policy such as administering the town's zoning laws while acting in his capacity as mayor and a voting member of the town's board of trustees, he would have an actionable tort claim.[1]

## III.

◼ The parties submitted evidentiary material supporting the following contentions. Smith contends that Baker influenced the appellees to fire him in retaliation for the town board denying his zoning

---

1. For an analysis of the employment-at-will doctrine and *Burk,* see Comment, *Burk v. K–Mart Corporation: The Oklahoma Supreme Court* *Adopts a Narrow Exception to the Employment-at-Will Rule?,* 14 Okla.City U.L.Rev. 645 (1989).

variance. Baker asserts that Smith was fired because he abused overtime hours and customers were dissatisfied with Smith's work. Baker also claims that Smith was fired upon Mitchell's advice. However, Mitchell denies that he ever recommended that Smith be fired and even states that Smith was a capable employee. Mitchell states that it was always Baker who brought up the subject of firing Smith at board meetings.

In *Thompson v. Medley Material Handling, Inc.*, 732 P.2d 461 (Okla.1987), this Court stated:

> Although the evidence relied upon to prove wrongful discharge must, in most cases, of necessity be circumstantial in nature, that evidence must have sufficient probative value to constitute the basis for a legal inference rather than mere speculation, and the circumstances proved must lead to the conclusion with reasonable certainty and probability.

*Id.* at 463. Generally, in wrongful discharge cases the evidence is only circumstantial, as it is in this case. The employee generally does not have access to information regarding the true cause of the firing, even though the employer does. Based on the fundamental differences in Mitchell's affidavit and the other depositions, the parties have raised an issue of material fact as to whether Smith was fired in retaliation for the zoning variance denial.

The issue of fact as to whether this was a retaliatory firing is material under the public policy exception to the employee-at-will doctrine. The facts in the record do not need to conclusively support a finding that Smith was terminated for voting against Baker's requested zoning variance, just that there is an issue of material fact which should have been left for a jury to decide. A substantial controversy still exists over the circumstances surrounding and reasons for Smith's termination. Thus, there exists an issue of material fact which is in controversy precluding summary judgment on this issue.

## IV.

The second issue is whether summary judgment should have been granted on the issue of tortious intentional infliction of emotional distress. In *Eddy v. Brown*, 715 P.2d 74, 76 (Okla.1986), this Court stated that the "tort of outrage" is defined by the "narrow standards" of Restatement (Second) Of Torts § 46(1) (1977), which reads:

> One who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Initially, it is the trial court's responsibility "to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet the § 46 standards." *Eddy* at 76. According to *Breeden v. League Services Corp.*, 575 P.2d 1374, 1377 (Okla.1978), the court must determine whether, "based upon the evidence presented, severe emotional distress can be found." [2]

**2.** Restatement (Second) of Torts § 46 (1977) comment j, provides in part:

> The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe.... [Emotional distress] includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises.... The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed.

> . . . . .

> The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge.

In *Breeden,* this Court was faced with a situation in which a trial court sustained a summary judgment in a tort action involving the plaintiff's right to be free from emotional distress. *Breeden* 575 P.2d at 1377. The actions of the defendant were not so extreme or outrageous as to subject the defendant to liability. Likewise, nothing in the record indicates that the appellees behaved in such an extreme or outrageous manner toward Smith to impose liability. In fact, Smith states in his deposition that no cross words were ever spoken by any of the appellees. Smith also admitted that he had no evidence of any intentional outrageous conduct; he simply believed that two of the appellees did not like him.

Although it is natural that an employee would suffer some sort of distress from being terminated, the distress here was not extreme or outrageous. Upon these facts, it is evident that Smith was not subjected to the type of conduct for which recovery under the tort theory of intentional infliction of emotional distress should be allowed.

## CONCLUSION

Because there still exist issues of material fact in controversy concerning the public policy exception to the terminable-at-will employment doctrine, we reverse and remand that issue to the trial court. As for the issue of intentional infliction of emotional distress, there are no factual questions in dispute as to the nature of appellees' behavior toward Smith. Therefore, summary adjudication was proper on this issue, and we agree with that part of the trial court's decision.

COURT OF APPEALS' OPINION VACATED; JUDGMENT OF TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART; CAUSE REMANDED.

OPALA, C.J., and DOOLIN, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

LAVENDER, SIMMS and HARGRAVE, JJ., concur in part, dissent in part.

SIMMS, Justice, dissenting in part:

Although I agree with Part IV of the majority's decision, I must respectfully dissent from the remainder of the opinion for two reasons: (1) no substantial controversy exists as to any material fact, and (2) Smith has failed to identify any "clear mandate of public policy" on which to base his wrongful discharge action. *Burk v. K–Mart Corp.,* 770 P.2d 24, 26 (Okla.1989).

First, the facts contained in the record do not conclusively support a finding that Smith was terminated for the town board's denial of Baker's requested zoning variance. I acknowledge that this normally is a question of fact properly left for a jury to decide. However, the facts set forth in the depositions taken of the board members and Smith present no connection between the town board's vote and Smith's discharge.

I note at the outset that the discharge occurred six to eight months after the zoning variance was denied. This fact alone brings into doubt any relation between the firing and the town board decision. Further evidence comes primarily from Smith's deposition wherein he testified that he never spoke to any of the board members about his discharge, and really did not know why he was fired. Rather, when asked what he thought was the reason behind his discharge, he testified, "I think it is of the people that just don't like me, like Melvin Baker and R.B. Shepherd."

He testified that nothing they had said made him feel that way and he never had cross words with them. Yet, he felt that Baker was upset with him "partly" because of the zoning variance denial. As to Shepherd, Smith once heard him tell Mitchell that he would like to see one of his hired hands get a job with the Coop. After the discharge, Smith got a "feeling" that this expressed desire for another person to have a Coop job was related to his own firing. Ultimately, Smith could not account for any reason why the other three board members would vote for his discharge.

Smith also "felt" that his age had a part in his discharge even though neither of the board members ever discussed it with him. When asked if he thought the whole board used his age as a reason for discharging him, he replied, "Well, I could think so."

He later admitted that he had *no* evidence that either age or the zoning variance denial were factors in his discharge. Rather, he *felt* that they were or thought that they *could be* factors. He also noted that the fact that a 30 year old man was hired to replace him made him think that age had a part in his discharge.

In detailed questioning about the zoning variance, Smith stated that Baker never made a request before the town board. Rather, Baker mentioned it to him, and he told Baker that he would bring it up at the town board meeting. Baker never requested Smith to do anything; Smith volunteered to bring it before the board. When Smith told Baker that the town board had denied the variance, Baker just said "Okay." Moreover, Smith said that *Baker was not upset* about the variance denial. In fact, he did not know if it affected Baker at all. Smith has heard nothing from Baker or anyone else about the zoning variance since he told Baker that it was denied, and as far as he was concerned, the issue laid dead and silent from that time on. Regardless of the lack of any evidence suggesting that the discharge was related to the zoning variance denial, Smith just "felt" that it was a part of the cause of his discharge.

Smith added that six months prior to his discharge, he had a conversation with Darrell Dupree, a former member of the Coop board who was replaced by Defendant Shepherd. *According to Smith, Dupree told him that Baker wanted to fire him but not to worry because the rest of the board would not allow it.* However, the firing of Smith was by a *unanimous* vote.

The Coop board members were also deposed, and under oath Baker stated that he never put much effort into getting the zoning variance and that his interest in the variance ended when his attorney advised him not to close the alley or build a barn on the property on which he wanted the variance. He testified that he was merely checking out the possibilities of getting a variance, and if he truly wanted one he would have gone to the town board meeting and formally requested one. Finally, Shepherd testified that he, rather than Baker, formally moved the board to release Smith after Mitchell suggested the board should discharge him.

The majority places emphasis upon the affidavit of Mitchell, the Coop manager, yet fails to note that the Coop board discharged Mitchell two months after terminating Smith's employment. Moreover, the depositions of each of the board members indicate that it was Mitchell who called for the special meeting for the express purpose of discussing Smith's performance and possible dismissal. Although some of the board members had observed Smith's work performance, they primarily took Mitchell's word that Smith was being abusive to customers and incurring too much overtime even though Mitchell had told him not to do so. They all testified that Mitchell had mentioned Smith's performance and overtime at numerous board meetings prior to this special one. Mitchell assured the board that he would talk to Smith about the problems. Additionally, Mitchell had the authority to fire Smith without board approval, but called the special meeting to have the board discharge Smith because Smith had threatened to sue Mitchell if Mitchell fired him.

I note that Mitchell's affidavit and Smith's testimony differed in terms of what was said regarding overtime, and Smith thought that Mitchell was untruthful with the board about what Mitchell and Smith had discussed concerning overtime and cutting back his hours.

Summary judgment is proper when it appears that there is no substantial controversy as to any material fact and that one party is entitled to judgment as a matter of law. *Sellers v. Oklahoma Publishing Co.*, 687 P.2d 116, 120 (Okla.1984). It is cases like this for which summary judgment was designed. Actions in courts of law should not be based upon "feelings," and those actions which have no basis in fact or law

should be summarily disposed to avoid the expenses of a prolonged jury trial. There is no substantial controversy as to the material facts, and the defendants were entitled to a judgment as a matter of law.

Moreover, even if the facts were conclusive that his discharge was a direct result of his actions as a member of the town board, he points to no constitutional provision, statute or decision by a court of this state which even suggests that such discharge was contrary to a public policy.

The majority notes that *Burk* requires the public policy exception to the terminable-at-will doctrine to be "tightly circumscribed." 770 P.2d at 29. Indeed, this principle was so significant to the Court that *Burk* went further to explain its application:

'"In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, courts should proceed cautiously if called upon to declare some public policy absent prior legislative or judicial expression on the subject."' 770 P.2d at 29 (quoting *Parnar v. Americana Hotels*, 65 Hawaii 370, 652 P.2d 625, 631 (1982)).

The majority finds that 11 O.S.1981, § 43–101 is a clear mandate of public policy and that Smith was terminated for acting consistent with it. I agree that the power of municipalities to enact zoning ordinances and grant or deny variances to established zones is important for developing and maintaining a community. However, by Smith's own testimony, Baker made no formal request for a variance. Smith said that he brought it up at the town board of trustees meeting, and the board "said no before I even got it out of my mouth." He never testified that he even voted against the variance. Moreover, Smith failed to indicate that any debate on the issue occurred or that an actual vote was taken on the matter.

To establish an action under the public policy exception, Smith must identify either

a "well defined public policy" which he refused to violate or a "clear and compelling public policy" with which he acted consistently. The majority finds that the latter policy applies, but the record contains no evidence to conclude that Smith was discharged for acting consistent with a clear and compelling public policy.

Material facts are those which have "legal significance." *Olson v. A.H. Robins Co., Inc.*, 696 P.2d 1294, 1300 (Wyo.1985). Although there may be some controversy between the parties as to some of the facts, there exists no substantial controversy as to any *material* facts because those facts in controversy bear no legal significance on the outcome of this case. Consequently, no material fact issues are left to be resolved, and appellees were entitled to summary judgment as a matter of law. *Sellers, supra*. The trial court correctly granted summary judgment to the defendants.

I am authorized to state that Justice LAVENDER and Justice HARGRAVE join with me in the views expressed herein.