**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 28 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BEVERLY HILL,

      Plaintiff-Appellee-Cross-
      Appellant,

v.

NORAM INVESTMENTS, U.S., L.L.C.,
and LISA MILLER,

      Defendants-Appellants-Cross-
      Appellees.

No. 98-6096, 98-6131
(D.C. No. CIV-96-1113-M)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, Circuit Judges, **LUCERO**, Circuit Judges, and **McWILLIAMS**, Senior
Circuit Judge.

On November 6, 1995, Beverly Hill ("Hill"), a 70-year old woman who had been

the resident-manager of the Fairway Park Apartments for nine years, was summarily

terminated, without notice, by Lisa Miller ("Miller"), a regional supervisor for Noram

Investments, U.S., L.L.C. ("Noram"), which company managed the Fairway Park

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3

Apartments, and other properties in Oklahoma City, Oklahoma. As a result of her termination, Hill brought suit in the United States District Court for the Western District of Oklahoma against Noram and Miller.

In her complaint, Hill alleged that she and Miller were both citizens and residents of Oklahoma, and that Noram was a Canadian corporation doing business in Oklahoma. Under the heading of "General Allegations," Hill alleged, *inter alia,* that when she was terminated by Miller, she was given no reason for her termination, and that shortly thereafter she was replaced by a 27-year old woman. In the first count of a three-count complaint, Hill alleged a claim of age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et. seq.* In a second count, Hill alleged a claim of age discrimination under the Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, § 1301, *et seq.* In the third count, pursuant to 28 U.S.C. § 1367, Hill alleged a pendent claim for the intentional infliction of emotional distress and sought compensatory and punitive damages therefor.[1]

The two defendants filed separate answers, though each was represented by the same attorney. Thereafter, a jury trial ensued. By its verdict the jury found in favor of the defendants on both of Hill's claims based on age discrimination. However, the jury found in favor of Hill on her claim based on intentional infliction of emotional distress and

---

[1]Oklahoma recognizes an independent tort action for intentional infliction of emotional distress, also called the tort of outrage. *Eddy v. Brown,* 715 P.2d 74, 76 (Okla. 1986).

awarded her damages in the amount of $159,330.00. Having found in favor of Hill on her third claim, the jury, pursuant to court instructions, went on to answer certain interrogatories and in so doing found by "clear and convincing evidence" that Noram and Miller had "acted in reckless disregard of the rights of others" and that they also had "acted intentionally and with malice towards others." In a "Second Stage" of the trial, the jury awarded Hill punitive damages in the amount of $50,000.00. Judgment in accord with the jury's verdict was thereafter duly entered.

Defendants filed a combined motion for judgment as a matter of law, or, in the alternative, for a new trial, and thereafter filed a supplemental motion for new trial. Hill also filed a post-trial motion in which she asked for judgment as a matter of law on her age discrimination claims.[2] By separate motion Hill asked for prejudgment interest on her judgment for $159,330.00 as compensatory damages from the date her suit was commenced to the date of the jury's verdict. On August 7, 1997, the district court awarded Hill prejudgment interest in the amount of $13,695.54 on the compensatory damage award of $159,330.00. On February 25, 1998, the district court denied defendants' motion for judgment as a matter of law, or for new trial, on the judgment previously entered on Hill's claim for intentional inflection of emotional distress and, at the same time, denied Hill's motion for judgment as a matter of law on her age

_____

[2]At the conclusion of all the evidence, counsel for Hill had moved for a directed verdict for Hill on the age discrimination claims, which motion was denied.

discrimination claims. The defendants now appeal, and Hill has cross-appealed.

As indicated, defendants filed a post-trial motion for judgment as a matter of law on Hill's claim based on intentional infliction of emotional distress, which motion, as stated, the district court denied. On appeal, Hill claims that the defendants, in effect, waived any right to file a post-trial motion for judgment as a matter of law, at least on the grounds asserted therein, since they did not during trial, i.e., at the conclusion of Hill's case-in-chief, nor at the conclusion of all the evidence, make any motion for judgment on Hill's third claim based on intentional infliction of emotional distress. We agree. As far as we can tell from the record before us, at the conclusion of Hill's case-in-chief, defense counsel only moved to dismiss or direct a verdict on the grounds that "there has not been a showing that the motivating factor for discharge was age." No mention was made concerning Hill's claim for intentional infliction of emotional distress. And at the conclusion of all the evidence, the only motion made by the defendants was for a directed verdict "on the basis that they failed to show pretext on the grounds of the defendants discharging the plaintiff." So again, there was no mention of Hill's third claim based on intentional infliction of emotional distress. In sum, both motions made by the defendants concerned Hill's claims of discharge based on age discrimination and neither related to Hill's third claim. So, this is not an instance where a non-specific motion for a directed verdict was made as to Hill's third claim for relief. It is an instance where no motion was made which related to Hill's third claim.

In *Aguinaga v. United Food & Com. Workers Int'l,* 993 F.2d 1463, 1470 (l0th Cir. 1993) we said "[o]nly those questions which have been raised in a prior motion for directed verdict may be pursued in a motion for judgment JNOV." It is true that in *Aguinaga* we went on to say that "[w]e liberally construe motions for directed verdict, and do not require technical precision as long as the trial court is aware of movant's position." However, it would appear that in the instant case, counsel for the defendants in his motions made at the conclusion of Hill's case-in-chief and at the conclusion of all the evidence, made <u>no</u> mention whatsoever of Hill's claim based on intentional infliction of emotional distress. Nothing at all. The record before us clearly indicates that the motions were only directed to Hill's age discrimination claims. In this general connection see also *Hinds v. General Motors Corp.,* 988 F.2d 1039, 1045 (10th Cir. 1993) where we said that "[i]ssues not raised in a motion for directed verdict may not be raised in a subsequent motion for judgment notwithstanding the verdict or considered on appeal."[3] Under these authorities, not having moved for judgment as a matter of law on Hill's claim for intentional infliction of emotional distress during trial, the defendants are barred from asserting any right to judgment as a matter of law on that claim in a post-trial motion, absent plain error, which as will be indicated *infra*, is not the present case. *See Hinds* at

---

[3]In 1991, Rule 50 of the Federal Rules of Civil Procedure was revised and the revision deleted therefrom the terms "motion for a directed verdict" and "motion for judgment notwithstanding the verdict," and, in lieu thereof, inserted the term "motion for judgment as a matter of law."

1045.

There remains defendants' alternative request for a new trial. In this regard, the defendants' position is that the evidence does not support the jury's verdict and that the verdict is, in fact, against the weight of the evidence. In their motion for a new trial, the defendants also argue that both the compensatory and punitive damage awards were excessive and "appear to have been given under the influence of passion." We disagree.

Our study of the record convinces us that there is sufficient evidence to support the jury's verdict that the defendants intentionally inflicted emotional distress on Hill. In this connection it is agreed that the mere fact that Hill was fired by the defendants is not, in and of itself, any evidence that the defendants intentionally inflicted emotional stress on Hill. *See, e.g., Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 432-33 (10th Cir. 1990); *Smith v. Farmers Coop. Ass'n,* 825 P.2d 1323, 1328 (Okla. 1992). Nevertheless, the firing of Hill triggered the events which formed the basis for her claim. A brief recital of the facts and circumstances surrounding discharge and the aftermath thereof will put this matter in focus.

Hill had been the resident-manager of Fairway Park Apartments for over nine years, the last year being after the defendants assumed management of the premises. Apparently there had never been any complaint about her services. On November 6, 1995, Hill was summarily discharged by Miller in front of two employees and given 30 minutes to clear out her office and turn in her keys. When she asked Miller why she was

being fired, Miller responded that she didn't need to have reasons. During this time a locksmith changed the locks on the door to Hill's office. The discharge, then, was, in a sense, like a "bolt from the blue," i.e., no prior notice of any dissatisfaction with Hill's performance, and no explanation at the time of the discharge as to the reason therefor. Further, the following morning Hill was given a formal eviction notice in which she was given five days to vacate the apartment in which she had resided for the past nine years. When it was pointed out that Oklahoma law gave Hill 30 days to vacate, the defendants agreed thereto.

At the time of the discharge, Miller demanded an immediate accounting by Hill of the petty cash fund. Hill responded that she would need time to make such accounting. The following day Hill left a message at the office that she would turn in the reconciliation on November 8th, whereupon Miller called the local police department and informed them that the petty cash fund had not been turned in. (In her testimony at trial, Miller indicated that her contact with the police was prompted by her understanding that she had to do so if Noram could make any subsequent recovery for a shortage in the petty cash fund under its blanket fidelity bond. It later developed that there was no shortage in the petty cash fund and that, in fact, the petty cash fund "owed" Hill $20.00.) In any event, in immediate response to Miller's complaint, a policeman arrived at Hill's door, knocked on her door for about five minutes and tested the doorknob. Hill was inside her apartment at the time, but did not open the door. She later testified that she thought

somebody was going to break down her door, and that the experience was "horrible." Later that same morning, Hill was informed by Miller that she had called the police regarding the petty cash fund.

Further, when Hill vacated her premises in 30 days, she moved in, temporarily, with her granddaughter who lived in another apartment in the Fairway Park Apartments, whereupon the defendants 4served a 30-day notice on the granddaughter. There was testimony by Hill, and others, as to the effect defendants' conduct had on her, i.e., emotional distress, public humiliation, loss of respect, inability to find other suitable living quarters, some loss of income, and the like.

In *Getter v. Wal-Mart Stores, Inc.,* 66 F.3d 1119, 1125 (10th Cir. 1995), in connection with our review of the district court's denial of a motion for new trial, we spoke as follows:

> Plaintiff's final argument is that the jury verdict is against the weight of the evidence. "A motion for a new trial made on the ground that the verdict of the jury is against the weight of the evidence normally presents a question of fact and not of law and is addressed to the discretion of the trial court." *Richardson v. City of Albuquerque,* 857 F.2d 727, 730 (10th Cir. 1988). Thus, we review the district court's denial of a motion for new trial on this ground for "a manifest abuse of discretion." *Id.* Our "inquiry focuses on whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence." *Black v. Hieb's Enters., Inc.,* 805 F.2d 360, 363 (10th Cir. 1986). In the case at bar, our review of the trial record reveals substantial evidence to support the jury's verdict. Thus, the verdict is not clearly, decidedly, or overwhelmingly against the evidence. We therefore find no abuse of discretion in the district court's denial of plaintiff's

motion for a new trial.

Our study of the present record convinces us that the jury's verdict finding the defendants guilty of intentional infliction of emotional distress is not clearly and overwhelmingly against the evidence and that, on the contrary, the jury's verdict finds support in the record. In denying defendants' motion for new trial, there was no "manifest abuse of discretion" by the district court. In sum, the record is such as to support the jury's finding that the defendants acted recklessly and intentionally and with malice towards Hill. In our view a "reasonable jury" could well conclude that Miller's conduct was extreme and outrageous.[4] *Baker v. Weyerhaeuser Co.,* 903 F.2d 1342, 1348 (10th Cir. 1990).

As indicated, the defendants also assert that the damages awarded by the jury are excessive and that a new trial should be granted on damages, i.e., both the compensatory damage award of $159,330.00 and the punitive damage award of $50,000.00. We disagree. The damages awarded by the jury are not *de minimis,* but, at the same time, are not excessive as a matter of law. The damages awarded, viewed in the light of Miller's conduct, do not shock the "judicial conscience" or raise an "irresistible inference" that passion or prejudice played a part in the jury's damage award. *Oklahoma Federated Gold*

---

[4]The question of whether Hill's emotional distress caused by defendants' intentional conduct was "severe" or not is a fact issue now resolved by the jury's verdict under proper instructions.

*& Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 142 (10th Cir. 1994).

Defendants also assert on appeal that the district court erred in granting prejudgment interest in the amount of $13,695.54 on the compensatory damage award of $159,330.00. *See* Okla. Stat. tit. 12 § 727 and *Timmons v. Royal Globe Ins. Co.,* 713 P.2d 589 (Okla. 1986). We are not inclined to disturb the district court's understanding of local Oklahoma law on prejudgment interest.

Minor complaint is made by the defendant to certain of the instructions given the jury. However, as we read the record, just before closing argument defense counsel, when asked by the court, did not object to any of the instructions, and, in fact, said they were "fine." After closing argument and after the instructions were read to the jury, but before the jury had commenced deliberation, defense counsel again indicated that he had no objection to the instructions.

Hill concedes that, if we affirm the judgment entered on her pendent claim based on intentional infliction of emotional distress, her cross-appeal should be dismissed as being moot. Accordingly, Appeal No. 98-6131 is hereby dismissed.

The judgment entered on Hill's claim for intentional infliction of emotional distress (Appeal No.98-6096) is affirmed.

ENTERED FOR THE COURT,


ROBERT H. McWILLIAMS
Senior Circuit Judge

- 10 -